RECEIVED

BY _____

AUG 1 9 2009

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA
                    Petitioner

CIVIL ACTION NO. 09-CV-1144

Vs.

JUDGE STAGG

TOMMY K. CRYER
          Respondent

MAGISTRATE:  JUDGE HORNSBY

## RESPONDENT'S OPPOSITION TO PETITION TO ENFORCE INTERNAL REVENUE SERVICE SUMMONS

MAY IT PLEASE THE COURT:

### STATEMENT OF THE CASE

This cause was initiated by the filing of a petition to enforce Internal Revenue Service (hereinafter IRS) summonses directed to respondent, Tommy K. Cryer (hereinafter "Respondent" or "Cryer"), demanding that he produce personal financial records therein described and to give testimony in connection therewith. Cryer objects to the both the demand for production and demand that he give testimonial evidence against himself.

1

## ARGUMENT AND LAW

The provisions of the United States Code regarding summons enforcement

proceedings, 26 U.S.C. §§ 7601 through 7610, have over the last three decades

been the subject of much litigation and consequently have been construed by the

federal courts of appeals as well as the United States Supreme Court.  In *Reisman*

*v. Caplin*, 375 U.S. 440, 84 S.Ct. 508 (1964), the Supreme Court held that a

witness or taxpayer could challenge an I.R.S. summons on any appropriate grounds

and may assert as a defense to the proceedings the fact that the materials sought by

the I.R.S. relate solely for use as evidence in a criminal prosecution. In *United*

*States v. Powell*, 379 U.S. 48, 85 S.Ct. 248 (1964), the Court outlined four

requirements which must be shown before any summons can be enforced.  In

*Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534 (1971), the Court held that

an I.R.S. summons could lawfully be used for a criminal investigation provided the

summons also had a civil purpose.  In *Couch v. United States*, 409 U.S. 322, 93

S.Ct. 611 (1973), the Court held that the Fifth Amendment to the U.S. Constitution

did not protect tax records in the possession of a taxpayer's accountant.  In *United*

*States v. Bisceglia*, 420 U.S. 141, 95 S.Ct. 915 (1975), the Court allowed the

issuance of a John Doe summons for the purpose of investigating a $40,000

deposit of $100 bills. In *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569

(1976), the Court held that the Fifth Amendment did not protect tax records in the

2

possession of the taxpayer's attorney. See also *United States v. Rylander*, 460 U.S. 752, 103 S.Ct. 1548 (1983). This line of cases clearly shows that the Internal Revenue Service has very broad summons authority and may secure virtually any record or document in the possession of a third party.

I.R.S. summonses are issued to two separate and distinct classes of persons, with one class representing third parties who have possession and custody of books and records of the taxpayers under investigation, and the other class comprising taxpayers under investigation. A summons enforcement action is utilized when compliance with the summons has not been obtained due to the taxpayer notifying the third party not to comply, by the institution of a suit to enjoin enforcement, or by the refusal on the part of the taxpayer to comply when summons is directed to him. When the Service proceeds to enforce a summons issued to either a third party record holder or the taxpayer himself, its burden of proof is very minimal and amounts to nothing more than proof of compliance with the requirements of *Powell*, supra; see *United States v. Will*, 671 F.2d 963 (6th Cir. 1982).

Basically, a taxpayer seeking denial of enforcement of the summons has available three defenses: (a) bad faith; (b) institutional posture, and (c) the Fifth Amendment. The "bad faith" defense is based upon *Reisman v. Caplin*, supra, and *Donaldson v. United States*, supra, and involves those situations wherein the summons has been issued for the improper purpose of gathering evidence needed

3

for a criminal prosecution after referral to the Department of Justice. The "institutional posture" defense is based upon *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357 (1978), and relates to those situations when the Service has made an institutional commitment to criminally prosecute the taxpayer under investigation but desires to withhold referral to the Justice Department to allow for the gathering of additional evidence needed for a successful criminal prosecution. These two defenses are most often utilized by a taxpayer when intervening in a third party summons enforcement action or commencing an action to enjoin enforcement of the summons.

The history and development of the Fifth Amendment right against self-incrimination has been one of slow but sure expansion of the benefits of its protection. James Madison, the prime author of this provision in the Bill of Rights to the U.S. Constitution, sought this provision to prevent the development in our country of proceedings similar to or identical with Spanish Inquisitions or Star Chamber proceedings. A cursory examination of the *William Penn Case*, 6 How. St. Tr. 951 (1670), reveals that resort to "Spanish Inquisitions" has on many occasions been desired in order to bring about the efficient operation of governmental machinery; this is what Madison desired to avoid by inserting the Fifth Amendment into our Constitution. The original intent or purpose for the Fifth Amendment was to compel the government to procure independent evidence

4

of the facts and proof of a crime other than through the mouth of the accused. Without such a requirement and with the availability of procedures such as the Inquisition or Star Chamber, the government could constantly harass law abiding citizens and might on some occasion procure, through duress and coercion, a confession. But as is well known, such confessions are highly suspect, hence we have the protection of the Fifth Amendment.

One of the most appropriate statements concerning the Fifth Amendment and its operation was made by U.S. Supreme Court Justice John Marshall in the case of *United States v. Aaron Burr*. Chief Justice Marshall, quoted in *Counselman v. Hitchcock*, 142 U.S. 547, 565, 12 S.Ct. 195 (1892), maintained that a witness could plead the Fifth Amendment not only in situations where his answer to a question would directly implicate him in a crime, but also in response to questions the answer to which would provide a link in the chain of evidence needed to convict the witness of a crime. Protection from compulsory testimony designed to implicate a witness in a crime has been secured through the Fifth Amendment and has been one of the most sacred principles known to American jurisprudence. This principle of the Fifth Amendment protection from compulsory testimony, absent a grant of immunity, has seen no erosion in its application since first expounded and requires but few citations to support it; see *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct.

5

370 (1906), *Blau v. United States*, 340 U.S. 159, 71 S.Ct. 223 (1950), and *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814 (1951).

The question of Fifth Amendment protection for the books, records and personal documents of a witness who may be implicated in a crime was first really considered in *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524 (1886), where the Supreme Court expanded Fifth Amendment protection against compulsory testimony to books and records of the witness. In granting such protection, the Court held:

> "And any compulsory discovery by extorting the party's oath, or compelling the production of his private books and papers, to convict him of crime, or to forfeit his property, is contrary to the principles of a free government. It is abhorrent to the instincts of an Englishman; it is abhorrent to the instincts of an American. It may suit the purposes of despotic power, but it cannot abide the pure atmosphere of political liberty and personal freedom," 116 U.S., at 631-32.

> "And we are further of opinion that a compulsory production of the private books and papers of the owner of goods sought to be forfeited in such a suit is compelling him to be a witness against himself, within the meaning of the fifth amendment to the Constitution, and is the equivalent of a search and seizure -- and an unreasonable search and seizure -- within the meaning of the fourth amendment," 116 U.S., at 634-35.

Since the decision in *Boyd*, the Supreme Court has on some occasions limited the full import of that historic ruling. In *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538 (1911), the Court held that the *Boyd* principle did not apply to corporations; see also *United States v. Peter*, 479 F.2d 147 (6th Cir. 1973); and *In*

6

*Re Grand Jury Empanelled March 8, 1983*, 722 F.2d 294 (6th Cir. 1983).  Still

later, application of *Boyd* to partnership records was prohibited in *Bellis v. United*

*States*, 417 U.S. 85, 94 S.Ct. 2179 (1974).  However until 1984, it still appeared

that personal, non-corporate tax records of a person with potential criminal liability

were still protected by *Boyd* principles.  When the Supreme Court held that *Boyd*

protection did not apply to partnership records in *Bellis*, supra, it expressly

affirmed this proposition by stating:

> "The privilege applies to the business records of the sole proprietor or
> sole practitioner as well as to personal documents containing more
> intimate information about the individual's private life," 417 U.S., at
> 87-88.

Likewise, *Fisher*, supra, did not emasculate *Boyd* in any respect as the issue

in that case was completely different; in fact, the Court in *Fisher* definitely

appeared to have sided with *Boyd* in the last paragraph of its opinion:

> "Whether the Fifth Amendment would shield the taxpayer from
> producing his own tax records in his possession is a question not
> involved here; for the papers demanded here are not his 'private
> papers,' see *Boyd v. United States*," 425 U.S., at 414.

Shortly after its decision in *Fisher*, the Court was confronted with a similar

issue in *Andresen v. Maryland*, 427 U.S. 463, 473-74, 96 S.Ct. 2737 (1976).  Here,

a search warrant had been issued for the seizure of certain private books and

records, and the criminal defendant was not required to produce those records or

authenticate them because authentication was achieved by the use of third parties.

7

The Supreme Court in *Andresen* did not emasculate *Boyd* in any way and in fact expressly affirmed *Boyd*:

> "Thus, although the Fifth Amendment may protect an individual from complying with a subpoena for the production of his personal records in his possession because the very act of production may constitute a compulsory authentication of incriminating information * * *, a seizure of the same materials by law enforcement officers differs in a crucial respect -- the individual against whom the search is directed is not required to aid in the discovery, production or authentication of incriminating evidence."

The Fifth Amendment to the U.S. Constitution states that no person shall be compelled to be a "witness" against himself in a criminal prosecution. Similar provisions exist in the constitutions of the various states of our nation, with some such constitutional provisions following the Fifth Amendment via use of the word "witness" while other provisions offer more expansive protection by stating that no person shall be compelled to give "evidence" against himself in a criminal prosecution.  There exist distinct and crucial differences in the type of protection offered under these two different types of constitutional provisions. The protection against being compelled to give "evidence" against the accused is far broader than protection only afforded to "witnessing" and giving "evidence" arguably would include providing to the prosecution documents incriminating to the accused. The protection afforded by the Fifth Amendment is only that of proscribing testimonial compulsion and is not as all encompassing as the provisions prohibiting compulsory production of "evidence."

8

Neither *Fisher* nor *Andresen* disturbed the holding in *Boyd* or *Bellis* and both are wholly consistent with these two other cases. What the Supreme Court did in these two cases was note the crucial difference between protecting "evidence" and being a compelled "witness"; private papers may no longer be specially protected and in a distinct and different class from other evidence, property or contraband. What the Supreme Court has directed is that an accused cannot be compelled to produce his own incriminating books and records because such would involve to a degree an amount of authentication of such books and records on the part of the accused; such is tantamount to compelled testimony specifically proscribed by the Fifth Amendment. What the Supreme Court has commanded is that if the government desires to obtain personal books and records and use the same against the accused, it must be done through witnesses other than the accused himself.

A survey of pre-1984 decisions reveals the continued vitality of the principles of *Boyd* and the crucial government-citizen relationship which it protects. In the First Circuit case of *In Re Grand Jury Proceedings (Martinez)*, 626 F.2d 1051, 1056 (1st Cir. 1980), the court found that "personal, self-created business records in the possession of a sole proprietor or practitioner would enjoy a privilege against subpoena." In the Second Circuit, the case of *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313 (2nd Cir. 1979), held that a corporate

9

official's Fifth Amendment plea to questions concerning the location of corporate records was valid; see also *United States v. Beattie*, 522 F.2d 267 (2nd Cir. 1975), *United States v. Patterson*, 219 F.2d 659 (2nd Cir. 1955), *In Re Grand Jury Subpoena Duces Tecum*, 657 F.2d 5 (2nd Cir. 1981), *In Re Grand Jury Witness (Gilboe)*, 699 F.2d 71 (2nd Cir. 1983), and *United States v. Bobart Travel Agency, Inc.*, 699 F.2d 618 (2nd Cir. 1983). The three cases of *In Re Grand Jury Empanelled March 19, 1980*, 680 F.2d 327 (3rd Cir. 1982), *In Re Grand Jury Proceedings (Johanson)*, 632 F.2d 1033 (3rd Cir. 1980), and *In Re Grand Jury (Colucci)*, 597 F.2d 851 (3rd Cir. 1979), demonstrate that the Third Circuit has protected private books and records from compulsory production. In *United States v. Henry*, 491 F.2d 702 (6th Cir. 1974), the Sixth Circuit quashed an I.R.S. summons to a taxpayer already indicted on a narcotics offense. The Seventh Circuit, faced with a pro se litigant in *United States v. Awerkamp*, 497 F.2d 832 (7th Cir. 1974), who was prematurely raising Fifth Amendment objections to the enforcement of an I.R.S. summons, held that the taxpayer could make specific Fifth Amendment pleas to questions directed at him when he complied with the order of enforcement.

In two other Seventh Circuit cases, *Hill v. Philpott*, 445 F.2d 144 (7th Cir. 1971), and *United States v. Dickerson*, 413 F.2d 1111 (7th Cir. 1969), that court held that the records of an individual taxpayer were immune from a summons. The

10

Eighth Circuit, in *Isaacs v. United States*, 256 F.2d 654 (8th Cir. 1958), held a

Fifth Amendment plea of a corporate official to be valid when he responded to

questions relating to $99,000 in checks written by the corporation. Another Eighth

Circuit opinion in *United States v. Plesons*, 560 F.2d 890 (8th Cir. 1977), would

have granted protection to the records of a doctor if he had raised his Fifth

Amendment plea to a grand jury subpoena before testifying about those records.

In the Ninth Circuit cases of *United States v. Cohen*, 388 F.2d 464 (9th Cir. 1967),

and *United States v. Helina*, 549 F.2d 713 (9th Cir. 1977), protection of a

taxpayer's records from production was upheld. The above cases demonstrate that

the great weight of authority in the various circuits has been that an individual

taxpayer's records are protected from compulsory production because of the Fifth

Amendment.

The Fifth and Eleventh Circuits have apparently treated this precise issue

more often than the others and have conclusively held that tax records of an

individual are immune from production on the basis of *Boyd*. In *Stuart v. United

States*, 416 F.2d 459 (5th Cir. 1969), *In Re Grand Jury Proceedings (McCoy)*, 601

F.2d 162 (5th Cir. 1979), *In Re Oswalt*, 607 F.2d 645 (5th Cir. 1979), *In Re Grand

Jury Subpoena (Kent)*, 646 F.2d 963 (5th Cir. 1981), and *United States v. Meeks*,

642 F.2d 733 (5th Cir. 1981), this principle was upheld. More specifically in

*United States v. Davis*, 636 F.2d 1028, 1043 (5th Cir. 1981), that court held:

11

> "Their cumulative teaching is that any incriminating papers in the actual or constructive possession of an individual, which he holds in his individual capacity, * * * and which he himself wrote or which were written under his immediate supervision, are absolutely protected by the *Boyd* principle from production by subpoena or equivalent process, regardless of whether they are business-related or more inherently personal in content."

The Sixth Circuit does not deviate in any respect from comparable decisions made in other circuits. In *Patty v. Bordenkircher*, 603 F.2d 587 (6th Cir. 1979), the court held that the government couldn't compel a criminal defendant to testify concerning his previous criminal convictions where they were relevant to a habitual offender statute. In *United States v. Hill*, 601 F.2d 253 (6th Cir. 1979), that court acknowledged that a taxpayer could raise Fifth Amendment objections by refusing to answer specific questions. In *United States v. Doss*, 563 F.2d 265, 275 (6th Cir. 1977), a case involving an indicted defendant called before a grand jury, that court concluded:

> "However, upon the trial of the defendant in a criminal case, it would be a clear violation of a defendant's right against self-incrimination under the Fifth Amendment of the Constitution to compel him to take the stand, testify and produce his records, relating to the matter with which he is charged."

The erosion of *Boyd* principles started in the early eighties. In *United States v. Schlansky*, 709 F.2d 1079, 1084 (6th Cir. 1983), a case where the taxpayer under investigation was compelled to surrender certain of his records which had previously been in his accountant's possession, the Sixth Circuit held that the three

elements of compulsion, testimonial communication and incrimination by such

communication were requisites to a valid assertion of the Fifth Amendment:

> "Under this focus the key question is whether the compelled
> production involves compelled testimonial communication. The
> answer to this question in turn depends on whether the very act of
> production supplies a necessary link in the evidentiary chain. Does it
> confirm that which was previously unknown to the government; e.g.,
> the existence or location of the materials? Does it supply assurance of
> authenticity not available to the government from sources other than
> the person summonsed? Though the party seeking to avoid
> compliance does not have to show more than is required to
> demonstrate that the privilege is properly claimed, he must make
> some showing that the act of production alone would involve an
> incriminating testimonial communication."

The Third Circuit case of *In Re Grand Jury Empanelled March 19, 1980*,

680 F.2d 327 (3rd Cir. 1982), involved the issue of compulsory production of

books and records and that court continued to uphold the principles of *Boyd*.

Because of a desire to have the Supreme Court adopt the *Schlansky* rationale, the

government sought and obtained a writ of certiorari with the United States

Supreme Court to review the decision in this case.  On February 28, 1984, the U.S.

Supreme Court reversed the above decision in *United States v. Doe*, 465 U.S. 605,

104 S.Ct. 1237, 1242 (1984).  In this pronouncement, the Court reversed its former

holding in *Boyd* and held that books and records were no longer protected by the

Fifth Amendment. It reasoned that the Fifth Amendment protected only compelled

testimony and not books and records, and it relied heavily upon its rationale in

*Fisher*, supra. But while the Court decided to withdraw Fifth Amendment

13

protection to books and records, it held that production of such books and records was entitled to such protection. The Court reasoned that compulsory production of books and records via subpoena or summons is communicative in nature and similar to giving testimony, therefor such production is entitled to Fifth Amendment protection:

> "Compliance with the subpoena tacitly concedes the existence of the papers by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena."

The U.S. Supreme Court in *Boyd v. United States*, supra, clearly held that compulsory production via subpoena or summons of books, records and other documents in the possession of a witness was not permitted by the Fifth Amendment. This decision prevailed for some 98 years and effectively prevented the government from obtaining such written documentation from one having potential criminal liability. In *United States v. Doe*, supra, the Court changed its construction of the Fifth Amendment and held that the Amendment did not protect such records; and by making this change, a problem not addressed by *Boyd* arose. If the records are not protected from compulsory production by the amendment, what protection by the Fifth Amendment is left to a witness under process to produce documents? In *Doe*, the Court analyzed this situation and found that the mere act of producing such documents via compulsion non-verbally provides the following:

14

(a) Such production concedes that the requested documentation exists;

(b) Such production proves that the same are in the witness' possession;

(c) Such production proves that the witness believes that the documents so produced are those which are sought;

(d) The act of production authenticates the documents.

Because of these non-verbal but communicative aspects present within any act of production, the Court held that the Fifth Amendment applied to the act of production. Thus, even though there is no longer any protection afforded by the Fifth Amendment for books and records, the Fifth Amendment's protection for the act of production accomplishes virtually the same result as under the *Boyd* doctrine.

This has proven to be the case as shown by various cases decided subsequent to *Doe*. In *In re Kave*, 760 F.2d 343, 355-56 (1st Cir. 1985), an attorney was permitted to plead the protection of the Fifth Amendment because the request to produce certain documentary evidence would have in effect, under the "act of production" rule, forced her to testify against herself, the court explaining:

> "The compelled production of such documents is prohibited only if there are testimonial aspects to the act of production itself. * * * This rule extends to the business records of a sole proprietor . * * * In this context, the rule has three elements: The Fifth Amendment protects against compulsory surrender of (1) personal business records, (2) in the possession of a sole proprietor or practitioner, (3) only with respect to the testimonial act implicit in the surrender itself."

15

For a few years after *Doe*, its rule was applied to corporate records. The *Doe*
"act of production" rule was followed in *In Re Grand Jury Proceedings*, 747 F.2d
1098 (6th Cir. 1984), and *In Re Grand Jury Matter*, 768 F.2d 525 (3rd Cir. 1985),
to prevent the compulsory production of corporate and partnership records.
However, in *Braswell v. United States*, 487 U.S. 99, 108 S.Ct. 2284 (1988), the
Court held that *Doe* did not apply to corporate records; see also *Doe v. United
States*, 487 U.S. 201, 108 S.Ct. 2341 (1988).

But the application of *Doe* has continued as to personal and private records.
In *United States v.(Under Seal)*, 745 F.2d 834 (4th Cir. 1984), a case decided some
seven (7) months after *Doe*, the Fourth Circuit specifically held that personal and
individual records can't be forcibly produced by any process, over a Fifth
Amendment objection; see also *United States v. Cates*, 686 F.Supp. 1185 (D.Md.
1988); *United States v. Argomaniz*, 925 F.2d 1349 (11th Cir. 1991); and *United
States v. Sharp*, 920 F.2d 1167 (4th Cir. 1990). In *In Re Grand Jury Proceedings
on Feb. 4, 1982*, 759 F.2d 1418 (9th Cir. 1985), it was determined that records of a
party under investigation in the hand's of his attorney were entitled to protection
under the *Doe* "act of production" rule. See also *In re Grand Jury Subpoena Dated
April 9, 1996*, 87 F.3d 1198 (11th Cir. 1996)(custodian could assert 5th regarding
location of unproduced records). Further, there is no "tax exception" to this rule;
see *United States v. Troescher*, 99 F.3d 933 (9th Cir. 1996). See also *United States*

16

*v. Hubbell*, 530 U.S. 27 (2000).  Thus, according to the rationale of these cases, the compulsory production of private personal records cannot be obtained in view of a valid Fifth Amendment objection. Therefore, it is clear that the decision in *Boyd* still produces a legal result, even if from its "grave."

The rule that a party or a witness can plead the right against self-incrimination in civil proceedings has been well established by an abundance of authority. In *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316 (1973), the U.S. Supreme Court stated this rule as follows:

> "The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future proceedings."

The subsequent decisions of *Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584 (1975), and *Pillsbury Company v. Conboy*, 459 U.S. 248, 103 S.Ct. 608 (1983), serve only to buttress this basic principle and apply it to specific situations.  This rule is followed by the federal appellate courts; see *In re Kave*, 760 F.2d 343 (1st Cir. 1985); *National Life Ins. Co. v. Hartford Accident & Indemnity Co.*, 615 F.2d 595 (3rd Cir. 1980); *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084 (5th Cir. 1979); *In Re Corrugated Container Anti-Trust Litigation*, 620 F.2d 1086 (5th Cir. 1980); *In re Morganroth*, 718 F.2d 161 (6th Cir. 1983); and *United States v. Jones*, 703 F.2d 473 (10th Cir. 1983).

17

IRS claims it wishes to interrogate Respondent as well as obtain records demanded, but Respondent objects to giving testimony against himself in either form, whether through the testimonial aspects of providing records and documents or through the actual act of testimony.  Respondent is not without some experience with respect to the mover in this matter and has good cause to believe that no semblance of fair play is to be expected.  In view of the IRS's previously demonstrated propensity to prosecute citizens regardless of their guilt; their history of concealing of and obstructing the redress of internal violations of law, including perjury, violations of stays, unauthorized promises of immunity in order to persuade others to join in violations,  ex parte communications, unlawful disclosure of secret grand jury proceedings and other egregious acts, Respondent considers all actions of the mover to be with subversive and corrupt motive.

Mover has historically taken the position that there are no activities remaining that are within the reservations of the Tenth Amendment to the States and the people, and, accordingly, would treat any activities or events of which Respondent might testify as being within the Constitutinally limited jurisdiction of the federal government and within the similarly limited realm of its taxing authority.  Accordingly, any question that the IRS could pose during any interrogation other than name, date of birth, address and serial number would meet with the response of invocation of Respondent's Fifth Amendment right (not

18

privilege) to refuse to give testimony against himself. The only questions that would not be so objectionable would be questions whose answers would not bear on any potential issue which would, by their very nature, be irrelevant and immaterial.

## CONCLUSION

A summons or subpoena for individual books and records, either personal or business, can't be enforced over a Fifth Amendment objection because of the *Doe* "act of production" rule and Respondent's objection to testifying regarding any information not already held by the IRS is well founded. Accordingly, it is respectfully submitted that the petition for enforcement of summonses be denied.

Respectfully submitted,

Tommy K. Cryer,
Respondent, Pro se

19

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Respondent's Opposition to

Petition to Enforce Summonses has this day been mailed to the offices of John A.

Broadwell, AUSA, U. S. Attorney's Office, 300 Fannin St., Suite 3201, Shreveport,

Louisiana ~~70601-3068~~, 71101 with sufficient postage affixed thereto

Shreveport, Louisiana, this 18 day of August, 2009.

Tommy K. Cryer

# Tommy K. Cryer
ATTORNEY AT LAW
7330 Fern Avenue, Suite 1102
Shreveport, Louisiana 71105
Office (318) 797-8949 – Fax (318) 797-8951
e-mail: CryerLaw@aol.com

August 18, 2009

Robert H. Shemwell
U. S. States District Court Clerk
Shreveport Division
300 Fannin St., Suite 1167
Shreveport, LA 71101

RECEIVED
BY _____ _ _McL_
AUG 1 9 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

Re:  United States of America vs. Tommy K. Cryer
     Civil Action No. 09-CV-1144

Dear Mr. Shemwell:

Please find enclosed original and one copy of Respondent's Opposition to Petition to Enforce Internal Revenue Service Summons in connection with the captioned proceeding.

I would appreciate your filing the original and returning the copy to me stamped "filed" in the enclosed SASE.

*Done 08/19/09 ML*

Thanking you for your assistance, I am

Yours very truly,

Tommy K. Cryer

(SCW)

TKC/gcw
Enclosures