RECEIVED

APR 3 0 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA
                              Petitioner            CIVIL ACTION NO. 09-CV-1144

          Vs.                                       JUDGE STAGG

TOMMY K. CRYER                                      MAGISTRATE:  JUDGE HORNSBY
          Respondent

## RESPONDENT'S OBJECTIONS
## TO MAGISTRATE'S REPORT AND RECOMMENDATION REGARDING
## PETITION TO ENFORCE INTERNAL REVENUE SERVICE SUMMONS

MAY IT PLEASE THE COURT:

### STATEMENT OF THE CASE

This cause was initiated by the filing of a petition to enforce Internal Revenue Service

(hereinafter IRS) summonses directed to respondent, Tommy K. Cryer (hereinafter "Respondent"

or "Cryer"), demanding that he produce personal financial records therein described and to give

testimony in connection therewith.  Cryer objected to both the demand for production and

demand that he give testimonial evidence against himself.  On March 2, 2010, Magistrate Judge

Mark L. Hornsby issued his Report and Recommendation, recommending that the Court grant

the government's request for an order directing Respondent to comply with the summonses.

With all due respect, Respondent objects to the Magistrate's Report and

Recommendation for the reasons hereinafter set forth.

1

## ARGUMENT AND LAW

Magistrate Hornsby cites the reasons for his recommendation as being, basically, that 1) "Respondent holds the IRS with a high degree of contempt"; 2) the government has made a prima facie case for enforcement while "Cryer has not carried his burden of showing that the Powell[1] criteria have not been met"; 3) "Cryer has also not shown that the financial records and information sought by the IRS are incriminating"; 4) "there is no Department of Justice referral with respect to Cryer" and 5) "Cryer does not deny that he has possession, custody, or control of the records sought." It is respectfully submitted that those findings do not support disregard of Respondent's Fifth Amendment right against self-incrimination.

### 1) "Respondent holds the IRS with a high degree of contempt"

Although any contempt, resentment or other ill feeling one similarly summonsed may bear regarding the IRS serves to neither enhance nor diminish one's rights under the law, the Magistrate having made multiple references to his misperception of Respondent's view of the IRS indicates that in this instance it should be addressed.

Respondent's objection to compulsory self-incrimination has apparently been misunderstood as a manifestation of contempt or resentment rather than what it actually is, an assertion of a fundamental, Constitutionally protected right.

Although the IRS has earned Respondent's contempt, and more, Respondent learned many, many years ago that hatred and ill will injure only those who harbor them and has, if only in defense of self, forgiven the IRS's contemptible conduct toward him and many others.

---

[1] *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248 (1964)

2

Respondent has forgiven the IRS agent who, in spite of her knowledge of Respondent's innocence, sought criminal investigation and prosecution due to her personal resentment of Respondent's insistence upon her obedience of law and adherence to prescribed procedures.

Respondent has forgiven the IRS agent who committed perjury before the Grand Jury regarding his knowledge of financial activities in two brokerage accounts about which he had no knowledge and falsely testifying that Respondent had used those accounts to hide income when in truth and in fact there was no such income.

Respondent has forgiven the five IRS agents who, in blatant violation of Rule 6 and the sanctity and secrecy of grand jury proceedings as well as 26 U.S.C. §§ 6103 and 7213, broadcast and published secret grand jury information and protected tax return information by form letters, phone calls and personal visits to its list of Respondent's clients and has even forgiven those both within and without the IRS who sought to conceal and whitewash those violations and protect the perpetrators from just consequences.

Respondent has forgiven those in the IRS who have posted false, malicious and libelous lies about Respondent on the IRS's alter-ego websites, such as Quatloos, Evans's and others.

Respondent has forgiven IRS agents who knowingly and intentionally filed false returns for Respondent without statutory or delegated authority to do so and who have admittedly made fraudulent allegations in tax filings and in their response to a petition in Tax Court.[2]

Thus, while Respondent may hold the IRS in very low esteem, an opinion reinforced by the IRS on a regular and ever-increasing basis, Respondent does not harbor any contempt for that agency nor for those who comprise it. Nor does that well-deserved low opinion have anything to

---

[2] IRS Counsel in Tommy K. Cryer v. C.I.R., U. S. Tax Court Docket No. 8118-09, has conceded that IRS agents exaggerated gross receipts alleged in Notices of Deficiency and answer to Tax Court petition by in excess of $2,669,806.00.

3

do with Respondent's assertion of his Fifth Amendment right against giving testimony that may be used and misused in order to again level false criminal accusations against Respondent.

Forgiveness does not mean forgetting the capacity and willingness of the trespasser to do harm. Likened to the "free bite" afforded dog owners, once the vicious propensity of the animal has been established by the first bite, Respondent, one of the owners of this 'dog', has a responsibility to keep it on a short leash.

Nevertheless, Respondent's opinion of the IRS does nothing to enhance nor to diminish Respondent's fundamental rights, the right against compulsory self-incrimination among those.

## 2) **The government has made a prima facie case for enforcement while "Cryer has not carried his burden of showing that the Powell criteria have not been met"**

With all due respect, the issue in this case is not whether the government has demonstrated its basis for issuing the summonses, the *Powell* criteria, but whether Respondent has a right against the compulsory act of production of the summonsed records pursuant to the Supreme Court's pronouncement's regarding that right. See *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 1242 (1984).

In his original objection Respondent recounted the jurisprudential history and evolution of Fifth Amendment protection against compulsory production of records and documents and for the sake of brevity reiterates that account by reference, but further discussion of the application of the *Doe* doctrine is warranted in view of the reliance on *Powell*, which has no application to the issue.

4

In *Doe*, *supra*, the Supreme Court recognized that the mere act of production is testimonial in nature and the compulsion of that testimonial act is in violation of the Respondent's right against being compelled to commit a testimonial act of production.

In *United States v. Doe*, supra, the Court changed its construction of the Fifth Amendment and held that the Amendment did not protect such records; and by making this change, a problem not addressed by *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524 (1886), arose. If the records are not protected from compulsory production by the amendment, what protection by the Fifth Amendment is left to a witness under process to produce documents? In *Doe*, the Court analyzed this situation and found that the mere act of producing such documents via compulsion non-verbally provides the following:

(a) Such production concedes that the requested documentation exists;

(b) Such production proves that the same are in the witness' possession;

(c) Such production proves that the witness believes that the documents so produced are those which are sought;

(d) The act of production authenticates the documents.

Because of these non-verbal but communicative aspects present within any act of production, the Court held that the Fifth Amendment applied to the act of production. Thus, even though there is no longer any protection afforded by the Fifth Amendment for books and records, the Fifth Amendment's protection for the act of production accomplishes virtually the same result as under the *Boyd* doctrine.

This has proven to be the case as shown by various cases decided subsequent to *Doe*. In *In re Kave*, 760 F.2d 343, 355-56 (1st Cir. 1985), an attorney was permitted to plead the protection of the Fifth Amendment because the request to produce certain documentary evidence

5

would have in effect, under the "act of production" rule, forced her to testify against herself, the

court explaining:

> "The compelled production of such documents is prohibited only if there are
> testimonial aspects to the act of production itself. * * * **This rule extends to the
> business records of a sole proprietor** . * * * In this context, the rule has three
> elements: The Fifth Amendment protects against compulsory surrender of (1)
> personal business records, (2) in the possession of a sole proprietor or practitioner,
> (3) only with respect to the testimonial act implicit in the surrender itself."
> (emphasis added)

For a few years after *Doe*, its rule was applied to corporate records. The *Doe* "act of

production" rule was followed in *In Re Grand Jury Proceedings*, 747 F.2d 1098 (6th Cir. 1984),

and *In Re Grand Jury Matter*, 768 F.2d 525 (3rd Cir. 1985), to prevent the compulsory

production of corporate and partnership records. However, in *Braswell v. United States*, 487 U.S.

99, 108 S.Ct. 2284 (1988), the Court held that *Doe* did not apply to corporate records; see also

*Doe v. United States*, 487 U.S. 201, 108 S.Ct. 2341 (1988).

The application of *Doe* has continued as to personal and private records. In *United States

v. (Under Seal)*, 745 F.2d 834 (4th Cir. 1984), a case decided some seven (7) months after *Doe*,

the Fourth Circuit specifically held that personal and individual records cannot be forcibly

produced by any process, over a Fifth Amendment objection; see also *United States v. Cates*, 686

F.Supp. 1185 (D.Md. 1988); *United States v. Argomaniz*, 925 F.2d 1349 (11th Cir. 1991); and

*United States v. Sharp*, 920 F.2d 1167 (4th Cir. 1990). In *In Re Grand Jury Proceedings on Feb.

4, 1982*, 759 F.2d 1418 (9th Cir. 1985), it was determined that records of a party under

investigation in the hands of his attorney were entitled to protection under the *Doe* "act of

production" rule. See also *In re Grand Jury Subpoena Dated April 9, 1996*, 87 F.3d 1198 (11th

Cir. 1996)(custodian could assert 5th regarding location of unproduced records). Further, there is

no "tax exception" to this rule; see *United States v. Troescher*, 99 F.3d 933 (9th Cir. 1996). See

6

also *United States v. Hubbell*, 530 U.S. 27 (2000). Thus, according to the rationale of these cases, the compulsory production of private personal records cannot be obtained in view of a valid Fifth Amendment objection.

The Fifth Circuit has apparently had no clear opportunities to address this identical situation, but it has on numerous occasions acknowledged that the rule of *Doe* is the law of the land and must be observed. For example, in *In Re Grand Jury Proceedings,* 814 F.2d 190 (5th Cir. 1987), at p. 192, the court observed:

> "Braswell argues that the district court erred when it refused to apply the doctrine
> of *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984),
> **which upheld the assertion of an act of production privilege by a sole
> proprietor**, to the case of a closely-held corporation." (emphasis added)

In *In Re Grand Jury Subpoena*, 767 F.2d 1130 (5th Cir. 1985), while finding *Doe* inapplicable to records of a collective entity, the court stated at 1130:

> "Lincoln's argument is based entirely on the Supreme Court's decision in *United
> States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), **holding that
> the act of producing the records of a sole proprietorship had testimonial
> significance and could not be compelled over Fifth Amendment objection.**
> We see *Doe* as applicable to the records of a sole partnership but not to the
> records of a collective entity held in a representative capacity." (emphasis added)

It is respectfully submitted that whether the government has met the *Powell* criteria in justifying its asking for the production of records, that standard does not deprive Respondent of his right to invoke his Fifth Amendment shield as recognized in *Doe*. As in the recent cases on the right to petition the government for redress of grievances, the right to ask does not necessarily include the right to an answer. So while the government may be justified in asking the question by *Powell* criteria, the Respondent's right to refuse to do so must be determined by the principles and pronouncements of the Supreme Court in *Doe*, not *Powell.*

7

3) **"Cryer has also not shown that the financial records and information sought by the IRS are incriminating**

And

4) **"there is no Department of Justice referral with respect to Cryer"**

Whether the act of production is in and of itself incriminating is not of any import, but rather the question is whether that act of production could lead to evidence that could be used in the prosecution of an accusation. During the *Boyd* era, the Supreme Court made that clear in *Hoffman* v. *United States*, 341 U.S. 479, 486 (1951), and that rule continues in the *Doe* era of the Fifth Amendment development of cases.

For example, in *U.S. v. Hubbell*, 530 U.S. 27 (2000), the Supreme Court held at p. 37-8:

"Finally, the phrase "in any criminal case" in the text of the Fifth Amendment might have been read to limit its coverage to compelled testimony that is used against the defendant in the trial itself. It has, however, long been settled that **its protection encompasses compelled statements that lead to the discovery of incriminating evidence even though the statements themselves are not incriminating and are not introduced into evidence.** Thus, a half century ago we held that a trial judge had erroneously rejected a defendant's claim of privilege on the ground that his  answer to the pending question would not itself constitute evidence of the charged offense. As we explained:

**'The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.'** *Hoffman* v. *United States*, 341 U.S. 479, 486 (1951).

**"Compelled testimony that communicates information that may "lead to incriminating evidence" is privileged even if the information itself is not inculpatory.** *Doe* v. *United States*, 487 U.S. 201, 208, n. 6 (1988). It is the Fifth Amendment's protection against the prosecutor's use of incriminating information derived directly or indirectly from the compelled testimony of the respondent that is of primary relevance in this case." (emphasis added)

8

Nor does the fact that this process has not been officially labeled as "criminal" diminish

Respondent's rights under the Fifth Amendment, thus the absence of any DOJ referral does not

deprive Respondent of those rights. As was pointed out in Respondent's original memorandum

herein, the rule that a party or a witness can plead the right against self-incrimination in civil

proceedings has been well established by an abundance of authority. In *Lefkowitz v. Turley*, 414

U.S. 70, 77, 94 S.Ct. 316 (1973), the U.S. Supreme Court stated this rule as follows:

> "The Amendment not only protects the individual against being involuntarily
> called as a witness against himself in a criminal prosecution but also privileges
> him not to answer official questions put to him **in any other proceeding, civil or
> criminal, formal or informal**, where the answers might incriminate him in future
> proceedings." (emphasis added)

The subsequent decisions of *Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584 (1975), and

*Pillsbury Company v. Conboy*, 459 U.S. 248, 103 S.Ct. 608 (1983), serve only to buttress this

basic principle and apply it to specific situations. This rule is followed by the federal appellate

courts; see *In re Kave*, 760 F.2d 343 (1st Cir. 1985); *National Life Ins. Co. v. Hartford Accident

& Indemnity Co.*, 615 F.2d 595 (3rd Cir. 1980); *Wehling v. Columbia Broadcasting System*, 608

F.2d 1084 (5th Cir. 1979); *In Re Corrugated Container Anti-Trust Litigation*, 620 F.2d 1086 (5th

Cir. 1980); *In re Morganroth*, 718 F.2d 161 (6th Cir. 1983); and *United States v. Jones*, 703 F.2d

473 (10th Cir. 1983).

Thus in this instance, the act of production would certainly constitute a "link in the chain

of evidence" and would lead to the same kind of evidence that the government has already used

once to wrongfully prosecute Respondent. The absence of a DOJ referral does not preclude

Respondent's invocation of his right against being compelled to make admissions of the

existence vel non of the records sought, their authenticity and that Respondent believes them to

9

be the records sought, etc., nor would it prevent those admissions from providing a link in the chain of evidence assembled and used for such a referral.

A rattlesnake that has not rattled is not bereft of its fangs.

## 5) "Cryer does not deny that he has possession, custody, or control of the records sought."

The crux of the problem with the compulsory production of documents and records is revealed in this factor underlying the Magistrate's recommendation. Although it is true that Respondent has not denied that he has possession of records sought, it is also true that Respondent has not admitted that he has such.

If subjected to the compulsory production sought by complainant Respondent would be forced to provide testimonial communication whether those records are in his possession, or not. If he has records his act of producing them would admit their existence and their authenticity, but if he does not have records he will be forced to admit that he has none.

Either way, Respondent would be compelled to provide testimonial communication that could provide a link in the chain of evidence that would be available for use by the government in any attempt to again wrongfully prosecute Respondent. Accordingly, it is strenuously submitted that enforcement of the production of records sought by the government is precluded by Respondent's rights under the Fifth Amendment.

## Withdrawal of Blanket Assertion of Fifth Amendment Right

Respondent cannot imagine any information that can be sought by the IRS through questioning Respondent for an examination process that could not also serve it in another

10

frivolous criminal mal-prosecution, but in an effort to resolve this dispute, Respondent is willing to appear and to be interrogated pursuant to the summonses.

Respondent is willing to, if ordered by the Court, as opposed to ordered by one of his public servants, appear and respond to questions posed him by the government, reserving the right to invoke his right against compulsory self-incrimination on a question by question basis. It is requested, however, that any such order fix the time and date far enough in advance for Respondent to obtain legal representation to accompany him and to notify the IRS of his intention to bring a certified court reporter to make a record of the government's interrogation.

## CONCLUSION

For the reasons set forth hereinabove it is respectfully but strenuously submitted that the government is not entitled to an order compelling Respondent to appear and produce records and documents described in the summonses in that 1) Respondent's opinion of the IRS is not a factor in whether he has a right against compulsory self-incrimination; 2) the government's having demonstrated a basis for issuing summonses under *Powell* does not deprive Respondent of his Fifth Amendment rights under *Doe*;  3) the testimonial aspect of the act of production of personal (as opposed to those of a corporation or collective entity); 4) and the fact that the same would otherwise form a link in the chain of evidence that could be used in a criminal manner; and would 5) force Respondent to either admit by the act of production the existence and authenticity of records or admit that he has no such records, afford a right to protection against compulsory production of documents and records.

It is further submitted that although Respondent cannot be compelled to produce personal records and documents, he is willing to appear and respond to questions, reserving his right to

11

invoke his right against self-incrimination on a question by question basis, and subject to his request that any such order of the Court afford Respondent sufficient time to obtain legal representation to accompany him and to provide the required notice to IRS of his intention to arrange for the presence of a certified court reporter to make a record of the interrogation.

Respectfully submitted,

Tommy K. Cryer, Respondent Pro Se

7330 Fern Ave., Suite 1102
Shreveport, LA 71105
318 797-8949
318 7978951 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Respondent's Objections to Magistrate's Report and Recommendations has this day been mailed to the offices of John A. Broadwell, AUSA, U. S. Attorney's Office, 300 Fannin St., Suite 3201, Shreveport, Louisiana 70601-3068, with sufficient postage affixed thereto

Shreveport, Louisiana, this 30th day of April, 2009.

Tommy K. Cryer

12